UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
G.L., an infant by her Father and Natural Guardian, MICHAEL LEE, and MICHAEL LEE, Individually,

Plaintiffs,

-against-

AMAZON.COM, INC. a/k/a AMAZON.COM SERVICES, INC. d/b/a AMAZON.COM, AMAZON MARKETPLACE, SCHYLLING ASSOCIATES, INC. and AS SEEN ON TV PEOPLE LLC,

Defendants.
---------------------------------------------------------------------X

**AMENDED**
**VERIFIED COMPLAINT**

**Case No.: 1:25-CV-05375**

Plaintiffs, by their attorneys, APPELL & PARRINELLI, complaining of the defendants, allege upon information and belief as follows:

THE PARTIES AND JURISDICTION

1. That at all times mentioned herein, the plaintiffs were and still are residents of the State of New York.

2. This Court has jurisdiction of this matter pursuant to the diversity of citizenship under 28 U.S.C. §1332 and the amount in controversy is greater than $75,000.00.

3. That at all times mentioned herein, the plaintiff, MICHAEL LEE, is the father and natural guardian of the infant plaintiff, G.L. and as such was and still is authorized to commence, maintain and continue this action on their behalf.

4. At all times hereinafter mentioned, defendant AMAZON.COM, INC. a/k/a AMAZON.COM SERVICES INC. d/b/a AMAZON.COM and AMAZON MARKETPLACE (hereinafter referred to as "AMAZON") was and still is a foreign C Corporation with its principal place of business located at 410 Terry Avenue N., Seattle, Washington 98109 and

with a New York City office located 7 West 34th Street, New York, New York.

5. That at all times hereinafter mentioned, defendant AMAZON was and still is a foreign corporation, duly authorized to do business and doing business in the State of New York.

6. That at all times hereinafter mentioned, defendant AMAZON was and still is a domestic corporation, duly authorized to do business in the State of New York.

7. That at all times hereinafter mentioned, defendant AMAZON was and still is a corporation doing business in the State of New York.

8. At all times hereinafter mentioned, defendant AMAZON was and still is licensed and authorized to do business in the State of New York.

9. That at all times hereinafter mentioned, the defendant AMAZON did and still does transact business in the State of New York.

10. Upon information and belief, defendant AMAZON expected or should reasonably have expected the acts complained of herein, to have consequences in the State of New York and the defendant derives substantial revenue from interstate and/or international commerce.

11. That at all times hereinafter mentioned, defendant SCHYLLING ASSOCIATES, INC. (hereinafter referred to as "SCHYLLING") was and still is a foreign corporation, duly authorized to do business and doing business in the State of New York.

12. That at all times hereinafter mentioned, defendant SCHYLLING was and still is a domestic corporation, duly authorized to do business in the State of New York.

13. That at all times hereinafter mentioned, defendant SCHYLLING was and still is a corporation doing business in the State of New York.

14. At all times mentioned herein, defendant SCHYLLING was and still is licensed and authorized to do business in the State of New York.

15. That at all times hereinafter mentioned, the defendant SCHYLLING did and still does transact business in the State of New York.

16. That at all times hereinafter mentioned, defendant SCHYLLING, its agents, servants and/or employees placed a product known as the *Nee Doh Dream Drop* into the stream of interstate commerce knowing said product was likely to be sold in, brought to, used in, or consumed in the State of New York.

17. Upon information and belief, defendant SCHYLLING expected or should reasonably have expected the acts complained of herein, to have consequences in the State of New York and the defendant derives substantial revenue from interstate and/or international commerce.

18. Upon information and belief, defendant SCHYLLING regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or services rendered in the State of New York.

19. That at all times hereinafter mentioned, defendant AS SEEN ON TV PEOPLE LLC (hereinafter referred to as "AS SEEN ON TV") was and still is a foreign corporation, duly authorized to do business and doing business in the State of New York.

20. That at all times hereinafter mentioned, defendant AS SEEN ON TV was and still is a domestic corporation, duly authorized to do business in the State of New York.

21. That at all times hereinafter mentioned, defendant AS SEEN ON TV was and still is a corporation doing business in the State of New York.

22. At all times mentioned herein, defendant AS SEEN ON TV was and still is licensed and authorized to do business in the State of New York.

23. That at all times hereinafter mentioned, the defendant AS SEEN ON TV did

and still does transact business in the State of New York.

24. That at all times hereinafter mentioned, defendant AS SEEN ON TV, its agents, servants and/or employees distributed and/or placed the product known as *Nee Doh Dream Drop* into the stream of interstate commerce knowing said product was likely to be sold in, brought to, used in, or consumed in the State of New York.

25. Upon information and belief, defendant AS SEEN ON TV expected or should reasonably have expected the acts complained of herein, to have consequences in the State of New York and the defendant derives substantial revenue from interstate and/or international commerce.

26. Upon information and belief, defendant AS SEEN ON TV regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or services rendered in the State of New York.

**<u>THE UNDERLYING FACTS</u>**

27. The Hazardous Substances Act (15 USCA §1261(P)) defines a "*misbranded hazardous substance*" as follows:

> "**(p)** *The term "misbranded hazardous substance" means a hazardous substance (including a toy, or other article intended for use by children, which is a hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted) intended, or packaged in a suitable form, for use in the household or by children, if the packaging or labeling of such substance is in violation of an applicable regulation issued pursuant to section 1472 or 1473 of this title or if such substance,* except as otherwise provided by or pursuant to section 1262 of this title, <u>*fails to bear a label*</u>--
>
> **(1)** which states conspicuously (A) the name and place of business of the manufacturer, packer, distributor or seller; (B) *the common or usual name or the chemical name (if there be no common or usual name) of the hazardous substance or of each component which contributes substantially to its hazard*, unless the Commission by regulation permits or requires the use of a recognized generic name; (C) <u>*the signal work "DANGER" on substances which are extremely flammable*</u>, corrosive or highly toxic;

(D) the signal word "WARNING" OR "CAUTION" on all other hazardous substances; (E) *an affirmative statement of the principal hazard or hazards, such as "Flammable", "Combustible", "Vapor Harmful", "Causes Burns", "Absorbed Through Skin", or similar wording descriptive of the hazard*; (F) *precautionary measures describing the action to be followed or avoided*, except when modified by regulation of the Commission pursuant to section 1262 of this title; (G) instruction, when necessary or appropriate, for first-aid treatment; (H) the word "poison" for any hazardous substance which is defined as "highly toxic" by subsection (h); (I) instructions for handling and storage of packages which require special care in handling or storage; and (J) the statement (i) "Keep out of the reach of children" or its practical equivalent, or,

(ii) *if the article is intended for use by children and is not a banned hazardous substance, adequate directions for the protection of children from the hazard*, and

**(2)** on which any statements required under subparagraph (1) of this paragraph are located prominently and are in the English language in conspicuous and legible type in contrast by typography, layout, or color with other printed matter on the label."

28. That prior to and at all times mentioned herein, the defendant SCHYLLING, its agents and/or employees, designed a line of squishy fidget/sensory toys known as the *Nee Doh Dream Drop*.

29. That prior to January 4, 2025, the defendant SCHYLLING, its agents and/or employees, designed the interior and exterior of the squishy fidget/sensory toy known as the *Nee Doh Dream Drop* which include, but are not limited to, interior contents which consisted of polyvinyl alcohol and/or maltose derived sugar-type gel products in a sealed squishy toy.

30. That prior to January 4, 2025, the defendant SCHYLLING, its agents and/or employees, manufactured the interior and exterior of the squishy fidget/sensory toy known as the *Nee Doh Dream Drop* which include, but are not limited to, interior contents which consisted of polyvinyl alcohol and/or maltose derived sugar-type gel products in a sealed squishy toy.

31. That prior to January 4, 2025, the defendant SCHYLLING, by its agents and/or employees, assembled the interior and exterior of the squishy fidget/sensory toy known

as the *Nee Doh Dream Drop* which include, but are not limited to, interior contents which consisted of polyvinyl alcohol and/or maltose derived sugar-type gel products in a sealed squishy toy.

32. That prior to January 4, 2025, the defendant SCHYLLING, by its agents and/or employees, inspected the interior and exterior of the squishy fidget/sensory toy known as the *Nee Doh Dream Drop* which include, but are not limited to, interior contents which consisted of polyvinyl alcohol and/or maltose derived sugar-type gel products in a sealed squishy toy.

33. That prior to January 4, 2025, the defendant SCHYLLING, by its agents and/or employees, tested the interior and exterior of the squishy fidget/sensory toy known as the *Nee Doh Dream Drop* which include, but are not limited to, interior contents which consisted of polyvinyl alcohol and/or maltose derived sugar-type gel products in a sealed squishy toy.

34. That prior to January 4, 2025, the defendant SCHYLLING, by its agents and/or employees, distributed the squishy fidget/sensory toy known as the *Nee Doh Dream Drop* which include, but are not limited to, interior contents which consisted of polyvinyl alcohol and/or maltose derived sugar-type gel products in a sealed squishy toy.

35. That prior to January 4, 2025, the defendant SCHYLLING, by its agents and/or employees, sold and marketed the squishy fidget/sensory toy known as the *Nee Doh Dream Drop* which include, but are not limited to, interior contents which consisted of polyvinyl alcohol and/or maltose derived sugar-type gel products in a sealed squishy toy.

36. That prior to January 4, 2025, the defendant AS SEEN ON TV, by its agents and/or employees, distributed the *Nee Doh Dream Drop*.

37. That prior to January 4, 2025, the defendant AS SEEN ON TV, by its agents

and/or employees, sold the *Nee Doh Dream Drop*.

38. That prior to January 4, 2025, the defendant AS SEEN ON TV, by its agents and/or employees, marketed the *Nee Doh Dream Drop*.

39. That prior to January 4, 2025, the defendant AS SEEN ON TV, by its agents and/or employees, tested the *Nee Doh Dream Drop*.

40. That prior to January 4, 2025, the defendant AS SEEN ON TV, by its agents and/or employees, inspected the *Nee Doh Dream Drop*.

41. That prior to January 4, 2025, the defendant AMAZON, by its agents and/or employees, sold the *Nee Doh Dream Drop*.

42. That prior to January 4, 2025, the defendant AMAZON, by its agents and/or employees, marketed the *Nee Doh Dream Drop*.

43. That prior to January 4, 2025, the defendant AMAZON, by its agents and/or employees, distributed the *Nee Doh Dream Drop*.

44. That prior to January 4, 2025, the defendant AMAZON, by its agents and/or employees, inspected the *Nee Doh Dream Drop*.

45. That prior to January 4, 2025, the defendant AMAZON, by its agents and/or employees, tested the *Nee Doh Dream Drop*.

46. That prior to January 4, 2025, the defendants AMAZON, SCHYLLING and AS SEEN ON TV had a duty to properly and sufficiently design, manufacture, assemble, test and inspect the *Nee Doh Dream Drop* toy prior to selling, marketing, distributing and allowing the Product to enter the stream of commerce in a condition not reasonably contemplated by the ultimate consumer and which was to ensure that the Product was safe for use by the consumer public and the plaintiffs herein.

47. That at all times prior to January 4, 2025, the defendant SCHYLLING failed to provide written warnings and/or sufficient warnings on the Product, its packaging and/or accompanying literature and/or website to warn users of the Product and the consumer public not to apply heat and/or freezing temperatures to the Product and the likelihood and probability that the Product would burst or split spilling hot liquid and steam which in turn could result in chemical burns.

48. That at all times prior to January 4, 2025, the defendant AMAZON failed to provide written warnings and/or sufficient warnings on the Product, its packaging and/or accompanying literature and/or website to warn users of the Product and the consumer public not to apply heat and/or freezing temperatures to the Product and the likelihood and probability that the Product would burst or split spilling hot liquid and steam which in turn could result in chemical burns.

49. That at all times prior to January 4, 2025, the defendant AS SEEN ON TV failed to provide written warnings and/or sufficient warnings on the Product, its packaging and/or accompanying literature and/or website to warn users of the Product and the consumer public not to apply heat and/or freezing temperatures to the Product and the likelihood and probability that the Product would burst or split spilling hot liquid and steam which in turn could result in chemical burns.

50. That at all times prior to January 4, 2025, the defendant SCHYLLING failed to perform proper and/or sufficient testing on the product to determine if the Product was safe for use.

51. That at all times prior to January 4, 2025, the defendant AMAZON failed to perform proper and/or sufficient testing on the Product to determine if the Product was safe for

use.

52. That at all times prior to January 4, 2025, the defendant AS SEEN ON TV failed to perform proper and/or sufficient testing on the Product to determine if the Product was safe for use.

53. That at all times prior to January 4, 2025, the defendant SCHYLLING failed to perform proper and/or sufficient inspection on the product to determine if the Product was safe for use.

54. That at all times prior to January 4, 2025, the defendant AMAZON failed to perform proper and/or sufficient inspection on the Product to determine if the Product was safe for use.

55. That at all times prior to January 4, 2025, the defendant AS SEEN ON TV failed to perform proper and/or sufficient inspection on the Product to determine if the Product was safe for use.

56. That at all times prior to January 4, 2025, the defendant SCHYLLING failed to perform prior and/or sufficient inspection on the Product to determine if the Product was safe for use.

57. That at all times prior to January 4, 2025, the defendant AMAZON failed to perform prior and/or sufficient inspection on the Product to determine if the Product was safe for use.

58. That at all times prior to January 4, 2025, the defendant AS SEEN ON TV failed to perform proper and/or sufficient inspection on the Product to determine if the Product was safe for use.

59. That prior to January 4, 2025, it was well known that when polyvinyl alcohol

products are subjected to freezing and then heat in a sealed environment, the substance inside expands and then turns to steam which in turn causes a pressure build-up which can split or burst the toy from the internal pressure.

60. That prior to January 4, 2025, it was also well known that when maltose derived sugar-type gel products are subjected to freezing then heat in a sealed environment, the maltose melts and/or thickens and/or caramelizes and burns producing gas and smoke which in turn causes pressure build-up in the toy which can split or burst from internal pressure.

61. That prior to January 4, 2025, when the combination of polyvinyl alcohol and/or maltose derived sugar-type products in the Product were subjected to freezing then heat in a sealed environment, the water and/or steam inside were caused to expand, which pressure build-up can split or burst the toy Product from internal pressure.

62. That despite full and complete knowledge of the likelihood of expanded internal pressure of the sealed toy Product under conditions where heat and/or freezing temperatures were applied to the Product the defendants designed, manufactured, assembled, tested, inspected, sold and marketed the Product without warnings to users of the Product and the consumer public.

63. That on or about October 29, 2024, a complaint was reported to the Consumer Product Safety Commission and made public that an 8-year-old child was playing with a similar squeeze toy as the Product herein designed and/or manufactured by SCHYLLING with similar and/or the exact contents as the *Nee Doh Dream Drop* when it split and/or burst when subjected to freezing and then heat causing the hot liquid inside the toy to contact a child's leg causing severe chemical burns.

64. That at all times prior to January 4, 2025, and/or at all times mentioned

herein, all of the defendants had received actual and/or constructive notice of the prior complaint reported to the Consumer Product Safety Commission as well as other prior incidents of persons having been burned with the Product and/or similar products and the inner contents of the Product and/or similar products when subjected to freezing and/or heat after the Product and/or similar products were placed in the freezer and then microwaved.

65. That at all times prior to January 4, 2025, and/or at all times mentioned herein, all of the defendants had received actual and/or constructive notice from social media sites such as TikTok that the *Nee Doh Dream Drop* toy and/or similar products were being placed in freezers and then being heated up in microwaves by consumers using the Product and/or similar products.

66. That at all times prior to January 4, 2025, and/or at all times mentioned herein, it was known and foreseeable to all the defendants that when the product was placed in the freezer and then heated in a microwave, the Product was subject to burst and split and cause hot liquid to be expelled from the interior of the toy causing chemical burns to the consumer users of the Product and other similar products with the same interior contents.

67. On or about November 17, 2024, and prior thereto, the Product known as *Nee Doh Dream Drop* was touted and promoted to plaintiffs for sale on defendant AMAZON's website amazon.com as a "#1 Best Seller" selection.

68. On or about November 17, 2024, plaintiff ordered the *Nee Doh Dream Drop* product from defendant AMAZON's website.

69. Plaintiff MICHAEL LEE and/or his wife paid the defendant AMAZON the sum of $18.04 using a credit card to purchase the *Nee Doh Dream Drop* product.

70. Plaintiff MICHAEL LEE reasonably believed that he was purchasing the *Nee*

*Doh Dream Drop* product from defendant AMAZON as the seller because he ordered it from their website and paid them for the Product.

71. On or about November 18, 2024, the *Nee Doh Dream Drop* product was delivered to plaintiffs by the defendant AMAZON.

72. On or about January 4, 2025, the infant plaintiffs G.L. and E.L. used the *Nee Doh Dream Drop* product in accordance with the purported packaging instructions and used and/or played with the product including inserting it into the microwave.

73. That prior to January 4, 2025, the infant plaintiff G.L. viewed videos on TikTok where users of the *Nee Doh Dream Drop* were regularly placing the Product in the freezer and then placing it in the microwave to enhance the use of the Product.

74. That on or about January 4, 2025, the infant plaintiff G.L. was using the *Nee Doh Dream Drop* product in a manner consistent with methods of use which were depicted, portrayed and shown on the social media site TikTok.

75. That at all times mentioned herein, the *Nee Doh Dream Drop* constituted a "toy or other article intended for use by children… [which] presents… a thermal hazard" and requires the branding and labeling requirements as set forth under the Federal Hazardous Substance Act (15 USCA §1261).

76. That on January 4, 2025, the Product's warning label, its packaging and container stated only, "CAUTION: Do not leave in car or direct sun. Contents may become hot."

77. That on and prior to January 4, 2025, the Product, its packaging and container did not contain any warnings relative to freezing and/or microwaving the Product or the dangers of combustion, exploding, bursting, splitting, catching fire or burning.

78. That on and prior to January 4, 2025, there were no warnings on the Product, its

packaging and/or container not to freeze and/or microwave the Product.

79. That on and prior to January 4, 2025, there was no indication that the Product, its packaging and/or container contained a substance that could cause chemical burns if it came into contact with the skin.

80. That on or immediately after January 4, 2025, and/or a short time thereafter, the defendants individually and/or jointly changed the labelling on the Product to read "Do not heat, freezer, or microwave; it may cause personal injury." evidencing the defendants, their agents and/or employees knew of the use or foreseeable misuse prior to the accident and/or that users of the Product were placing the Product in the freezer and/or then heating up the Product.

81. That at all times on January 4, 2025, the infant plaintiff G.L. followed all instructions on the Product packaging and labels in the use of the Product.

82. On or about January 4, 2025, after inserting the Product into the freezer and then microwaving and removing the Product from the microwave, the Product exploded, burst and/or split onto the infant plaintiff G.L. resulting in significant facial chemical burns.

83. That at all times prior to the date of said accident all of the defendants knew and/or should have known and/or it was reasonably foreseeable that the Product would or could be placed in a freezer and/or microwave and the defective and dangerous nature of the Product and the likelihood of the Product exploding and of other prior similar incidents. Said notice was provided by the Consumer Product Safety Commission authorities in letters, warning(s) and on their website, and further notice was provided and/or was discernable with reasonable care, review and monitoring on TikTok and the internet and from prior similar events as the defendants in the exercise of reasonable care should have been reviewing, monitoring and following.

84. While the infant plaintiff G.L. was making use of the Product as mentioned above in a manner known and/or anticipated by the defendants, the Product burned the infant plaintiff G.L.'s skin throughout her face causing the infant plaintiff to require extensive medical and hospital treatment and to suffer severe and permanent personal injuries including but not limited to scarring of the face.

85. Had a proper warning been provided to the plaintiffs, the plaintiffs would not have placed the Product in the freezer and would not have microwaved and/or heated the Product and said Product would not have combusted and/or exploded.

86. That at all times mentioned herein, the defendants also knowingly continued to manufacture, distribute, sell and market the Product despite full and complete knowledge that the Product was being placed in freezers and then being microwaved by the consumer public and the defendants with reckless disregard for the safety of the public, after having received notification from social media sites such as TikTok and the United States Consumer Product Safety Commission that the Product was bursting, splitting and exploding causing children to sustain chemical burns, the defendants failed to investigate and/or properly investigate prior similar incident(s) where other children were injured and failed to change the warning label on the Product, its packaging and accompanying literature despite having full knowledge of the dangers and hazards of the latent and foreseeable use of the Product, all of which constitutes intentional concealment from the consumer public and children of the foreseeable dangers and hazards which entitles the plaintiffs to punitive damages.

87. That at all times mentioned herein, the defendants only changed the warnings on the Product, its packaging and/or literature after the happening of the incident alleged herein and the injuries which resulted to the infant plaintiff. As such the defendants ignored and

disregarded with conscious indifference to known or potentially known dangers, their own internal investigations and/or inquiries and knowingly failed to consider the intensity of the necessary language used on the warning and knowingly failed to prominently display the warning in and on the product which resulted in there being continued similar incidents and injuries, all of which constitutes reckless and wanton behavior, activity and/or omissions which entitles the plaintiffs to punitive damages.

88. That at all times mentioned herein, the defendants refused to redesign the Product despite knowledge of its dangers; refused and/or failed to issue a recall of the Product and/or change the warnings accordingly. That at all times mentioned these affirmative acts and/or omissions were based on a cost-benefit decision prioritizing profit over safety, all of which entitles the plaintiffs to punitive damages.

**FIRST CAUSE OF ACTION AGAINST THE DEFENDANTS ON FAILURE TO WARN THEORY**

89. Plaintiffs repeat and reallege each and every foregoing allegations in their entirety with the same force and effect as if fully set forth at length herein.

90. That prior to January 4, 2025, the defendants SCHYLLING, AS SEEN ON TV and AMAZON each jointly and severally placed the *Nee Doh Dream Drop* into the stream of commerce by virtue of being the designer(s), manufacturer(s), distributor(s), tester(s), inspector(s), seller(s), marketer(s) and promoter(s) of the Product.

91. That at all times mentioned herein and prior to January 4, 2025, the defendants were careless and negligent in that the Product was not reasonably safe and the Product, its packaging and accompanying literature and instructions failed to provide sufficient and adequate warnings, including, but not limited to, the failure to include warnings of the potential hazards of placing the Product in a freezer and then placing the Product in a microwave; in failing to warn

users of the Product of the reasonable likelihood that the Product could burst, split, expand and/or explode and cause chemical burns; and in failing to comply with all statutes, laws, regulations and rules.

92. That the defendants, their agents and/or employees knew and/or should have known that the *Nee Doh Dream Drop* was subject to exploding, bursting and splitting and causing chemical burns.

93. At all times prior to January 4, 2025, the defendants, their agents and/or employees failed to warn the public, and in particular, the plaintiffs herein, about the serious consequences in using the *Nee Doh Dream Drop* all as described above and the defendant had a duty to warn against dangers resulting from foreseeable uses which it knew or should have known and failed to warn the public, and in particular, the plaintiffs herein, about the serious consequences in using the *Nee Doh Dream Drop* all as described and this failure to warn was a substantial factor and a proximate cause of the alleged injuries and harm to all of the plaintiffs.

94. The aforesaid *Nee Doh Dream Drop* was a hazardous and defective product and each of the defendants were careless and negligent in violation of all applicable state and federal laws including, but not limited to, the Federal Hazardous Substance Act as described above, all of which was a substantial factor and a proximate cause of all of the injuries to the plaintiffs.

95. That the defendants each had a duty to use reasonable care to give adequate warnings of the dangers that they knew or, in the use of reasonable care, should have known existed by such use by the consumer public and the parents and children who had purchased the Product and were freezing and microwaving the Product to make it more malleable for the children to play with the Product, all as described above.

96. That at all times prior to January 4, 2025, and on that date, it was reasonable

and foreseeable that the infant plaintiffs would use the Product in the manner in which it was used.

97. That at all times mentioned herein and prior, the defendants as the manufacturer(s), distributor(s), assembler(s), inspector(s), tester(s), marketer(s), seller(s), designer(s) and promoter(s) are jointly and severally liable for the defective and hazardous Products and for failing to provide the warnings, labels, and safety materials and literature as required under all applicable laws.

98. That the defendants failed to timely and properly recall the defective and hazardous Product; failed to remove it from the market when it knew and/or should have known of the defective and hazardous condition; failed to send out notices and warnings to purchases of the defective and hazardous Product; failed to place videos, notices and warnings on the internet, defendants stores and on consumer websites, public message boards, social media and all advisory sources.

99. That the defendants are liable under all theories of negligence and strict liability for the failure to warn of the dangers and hazards mentioned above which were the substantial factor in proximately causing all of the plaintiffs' injuries.

## SECOND CAUSE OF ACTION AGAINST THE DEFENDANT SCHYLLING FOR THE NEGLIGENT FAILURE TO DESIGN AND MANUFACTURE A SAFE AND HAZARD FREE PRODUCT

100. Plaintiffs repeat and reallege each and every foregoing allegations in their entirety with the same force and effect as if fully set forth at length herein.

101. That the defendant SCHYLLING as the designer, assembler, tester, inspector, assembler, marketer, seller and promoter of the Product had a duty to the public consumer and the plaintiffs herein to sell and provide a safe and defective free Product.

102. That the defendant SCHYLLING carelessly and negligently failed to design and manufacture a safe product; failed to produce, design and manufacture an exterior on the Product which was seam-free; failed to design and manufacture a Product which had seams which would not rupture, burst and split when placed under pressure; failed to design and manufacture a maltose derived sugar gel and/or polyvinyl alcohol interior to the toy which would not expand and/or explode when placed in the freezer and/or in a microwave; failed to create an exterior cover and/or casing to the toy which was strong enough to prevent the toy from bursting, splitting and/or exploding; failed to design and/or manufacture a toy which was more sturdy and not weakened with continued use and pliability, all of which was a substantial factor and proximate cause of all the injuries to the plaintiffs.

103. As a result of all the aforementioned allegations the infant plaintiff G.L. was caused to sustain serious and permanent injuries, cosmetic disfiguring, scarring, severe pain and suffering, mental anguish and emotional upset and as a result, the infant has and will continue to incur and sustain medical bills and payments in amounts to be specified and is left with a lifetime facial scar.

104. By reason of all of the foregoing plaintiffs are entitled to recover compensatory damages from all of the defendants, including, but not limited to, punitive damages, all at the time of trial.

**WHEREFORE**, plaintiffs demand judgment against defendants on each of the aforesaid causes of action in an amount in excess of the monetary jurisdictional limits of any and all lower Courts that would otherwise have jurisdiction, including punitive damages and in amounts to be determined upon the trial of this action, together with the costs and disbursements of this action and any other relief as the Court deems just and proper.

Dated: New York, New York
April 22, 2026

*John J. Appell*
John J. Appell, Esq.
APPELL & PARRINELLI
*Attorneys for Plaintiffs*
3 West 35th Street, 6th Floor
New York, New York 10001
(212) 947-0101
robert@aptriallaw.com
nyljja@aol.com

CERTIFICATION

Pursuant to Federal Rule of Civil Procedure 11, I, John J. Appell, certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: New York, New York
April 22, 2026

*John J. Appell*
John J. Appell, Esq.
APPELL & PARRINELLI
*Attorneys for Plaintiffs*
3 West 35th Street, 6th Floor
New York, New York 10001
(212) 947-0101

robert@aptriallaw.com
nyljja@aol.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------X

G.L., an infant by her Father and Natural Guardian, MICHAEL LEE, and MICHAEL LEE, Individually,

Plaintiffs,

-against-

AMAZON.COM, INC. a/k/a AMAZON.COM SERVICES, INC. d/b/a AMAZON.COM, AMAZON MARKETPLACE, SCHYLLING ASSOCIATES, INC. and AS SEEN ON TV PEOPLE LLC,

Defendants.

-----------------------------------------------------------------------X

**AMENDED**
**VERIFIED COMPLAINT**

**Case No.: 1:25-CV-05375**

---

**AMENDED VERIFIED COMPLAINT**

---

**APPELL & PARRINELLI**
***Attorneys for Plaintiffs***
**3 West 35th Street, 6th Floor**
**New York, New York 10001**
**(212) 947-0101**