## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

G.L., an Infant by her Father and Natural
Guardian, MICHAEL LEE and MICHAEL LEE,
Individually,

                                                Plaintiffs,

v.

AMAZON.COM, INC. a/k/a AMAZON.COM
SERVICES, INC. d/b/a AMAZON.COM,
AMAZON MARKETPLACE; SCHYLLING
ASSOCIATES, INC.; and AS SEEN ON TV
PEOPLE, LLC,

                                        Defendants.

-------------------------------------------------------------------X

: Civil Action No. 1:25-cv-05375 (AS)

: ORAL ARGUMENT
: REQUESTED

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED VERIFIED COMPLAINT

---

**APPELL & PARRINELLI**
John J. Appell, Esq.
Attorneys for Plaintiffs
3 West 35th Street, 6th Floor
New York, New York 10001
(212) 947-0101

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT .................................................................................................1

RELEVANT FACTUAL ALLEGATIONS...............................................................................2

ARGUMENT...............................................................................................................................4

POINT I—ON A RULE 12(b)(6) MOTION THE COURT MUST ACCEPT THE WELL-PLEADED ALLEGATIONS AS TRUE AND DRAW ALL REASONABLE INFERENCES IN PLAINTIFFS' FAVOR ...............................................................................................................4

POINT II—PLAINTIFFS HAVE ADEQUATELY PLEADED A FAILURE-TO-WARN CLAIM OF THE KIND THE COURT IDENTIFIED AS SUFFICIENT TO SURVIVE DISMISSAL ................................................................................................................................5

    A.  The TikTok and CPSC allegations establish foreseeability and notice at the pleading stage ...........................................................................................................................5

    B.  Defendants' "open and obvious" and "extreme misuse" arguments raise fact questions and misapply the governing law ...........................................................................................8

    C.  Plaintiffs have adequately pleaded proximate cause .........................................................9

POINT III—PLAINTIFFS' STATE-LAW NEGLIGENCE CLAIM FOR NON-COMPLIANCE WITH THE FHSA'S MANDATORY SIGNAL-WORD AND HAZARD-STATEMENT REQUIREMENTS IS NOT PREEMPTED AND IS ADEQUATELY PLEADED UNDER MILANESE ..................................................................................................................10

POINT IV—THE SECOND CAUSE OF ACTION IS PROPERLY BEFORE THE COURT AND ADEQUATELY PLEADED FOR THE PLEADING STAGE...........................................13

POINT V—THE DEMAND FOR PUNITIVE DAMAGES SHOULD NOT BE STRICKEN AT THE PLEADING STAGE...............................................................................................................14

POINT VI—IN THE ALTERNATIVE, LEAVE TO AMEND SHOULD BE GRANTED BECAUSE FURTHER AMENDMENT WOULD NOT BE FUTILE.........................................16

CONCLUSION ...........................................................................................................................17

## TABLE OF AUTHORITIES

*Page(s)*

***Cases***

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)......................................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................4

*Billiar v. Minnesota Mining & Mfg. Co.*, 623 F.2d 240 (2d Cir. 1980)......................4-5

*Collins v. Proctor & Gamble, Inc.*, 1998 WL 812620 (E.D.N.Y. Mar. 12, 1998)..........8

*Colon v. BIC USA, Inc.*, 199 F. Supp. 2d 53 (S.D.N.Y. 2001)......................................5

*Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198 (E.D.N.Y. 2004)................9

*Foman v. Davis*, 371 U.S. 178 (1962).......................................................................17

*Home Ins. Co. v. American Home Prods. Corp.*, 75 N.Y.2d 196 (1990).....................15

*Johnson v. Johnson Chem. Co.*, 183 A.D.2d 64 (2d Dep't 1992).................................5

*Leibstein v. LaFarge N. Am. Inc.*, 689 F. Supp. 2d 373 (E.D.N.Y. 2010)..................11

*Liriano v. Hobart Corp.*, 92 N.Y.2d 232 (1998) ...................................................5, 8–9

*M.H. v. Bed Bath & Beyond Inc.*, 156 A.D.3d 33 (1st Dep't 2017) .........................9, 14

*Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2d Cir. 2001)......................2, 10–11, 16

*Miller v. Sportsman's Guide, LLC*, 2024 WL 1683842 (W.D.N.Y. Mar. 28, 2024).......9

*Richards v. Home Depot, Inc.*, 456 F.3d 76 (2d Cir. 2006).......................................11

*Riegel Textile Corp. v. Celanese Corp.*, 649 F.2d 894 (2d Cir. 1981) ......................10

*Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471 (1980)..........8–9

*Sacerdote v. N.Y. Univ.*, 9 F.4th 95 (2d Cir. 2021).....................................................4

*Thomas v. ConAgra Foods, Inc.*, 2021 WL 1176011 (W.D.N.Y. Mar. 29, 2021) .......9-10

*Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102 (1983).........................................13

*Wallace v. Parks Corp.*, 212 A.D.2d 132 (4th Dep't 1995) ......................................10

*Statutes*

15 U.S.C. § 1261(f)................................................................................................12

15 U.S.C. § 1261(p)...............................................................................................11

15 U.S.C. § 2055a.....................................................................................................7

*Rules*

Fed. R. Civ. P. 12(b)(6) .................................................................1, 2, 4, 12, 16

Fed. R. Civ. P. 15(a) ...........................................................................................16

*Record Citations*

Opinion and Order (ECF No. 29) .......................................................1, 5, 6, 13

Amended Verified Complaint (ECF No. 35)............................................... 1-15

Affidavit of Michael Lee (ECF No. 14-4) .......................................2, 3, 4, 6, 16

iii

## PRELIMINARY STATEMENT

Plaintiff G.L., an infant by her father and natural guardian Michael Lee, respectfully submits this memorandum of law in opposition to the motion of defendants Amazon.com, Inc. a/k/a Amazon.com Services, Inc. d/b/a Amazon.Com and Amazon Marketplace ("Amazon"), Schylling Associates, Inc. ("Schylling"), and As Seen On TV People, LLC ("ASOTV") (collectively, "defendants") to dismiss the Amended Verified Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

The defendants' motion asks the Court to reverse course on its own prior guidance. When the Court dismissed the original pleading on February 6, 2026, it not only identified deficiencies but told the parties what would cure them. The Court expressly stated that "a viral TikTok video and a warning from a body like the Consumer Product Safety Commission seem like enough to get past a motion to dismiss on tort theories that relate to a failure to warn or the reasonable foreseeability that the product would be used this way," and directed plaintiffs to "add information about the TikTok video and any other publicly known warnings about putting the Dream Drop toy in the microwave." (ECF No. 29.) Plaintiffs did exactly that. The Amended Complaint now pleads the months-long TikTok practice of freezing and microwaving the product, the pre-purchase incident reporting to the Consumer Product Safety Commission ("CPSC") concerning a materially identical Schylling gel toy, and—critically—defendants' own post-incident change of the warning label to read "Do not heat, freezer, or microwave; it may cause personal injury." (ECF No. 35 Am. Compl. ¶¶ 63–66, 73–74, 80.)

Defendants' motion largely ignores the Court's guidance and instead asks the Court to resolve, on the pleadings, a series of disputed factual questions: what the product is actually made of, how that substance behaves when heated under pressure in a sealed container, whether

1

microwaving a sensory toy widely depicted on social media was foreseeable, and whether defendants had notice. Those are quintessential questions for discovery and trial, not for a Rule 12(b)(6) motion in which every well-pleaded allegation must be accepted as true and every reasonable inference drawn in plaintiffs' favor. The motion should be denied.

To streamline the issues, plaintiffs clarify the posture of their claims. Plaintiffs do not assert a private right of action under the Federal Hazardous Substances Act ("FHSA"). Rather, plaintiffs assert a New York common-law negligence/failure to warn claim measured against the FHSA's mandatory labeling standard—specifically, the requirement that a covered product bear the signal word and an affirmative statement of the principal hazard the statute prescribes. The Second Circuit has squarely held that such a non-compliance claim is not preempted and states a claim. *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2d Cir. 2001). So framed, every claim challenged in the motion is adequately pleaded, and in all events the appropriate remedy for any residual deficiency is leave to amend, not dismissal with prejudice.

## RELEVANT FACTUAL ALLEGATIONS

The Nee Doh Dream Drop (the "product") is a squishy fidget/sensory toy designed, manufactured, distributed, marketed, and sold by defendants and intended for use by children. (ECF No. 35 Am. Compl. ¶¶ 28–46.) On or about November 17, 2024, the product was promoted on Amazon's website as a "#1 Best Seller," and Mr. Lee purchased it for $18.04. (*Id.* ¶¶ 67–69.) It was delivered the next day. (*Id.* ¶ 71.)

For months before plaintiffs' purchase, users on the social media platform TikTok depicted parents and children freezing the product and then heating it in a microwave to make it more malleable for play. (ECF No. 35 Am. Compl. ¶¶ 65–66, 73–74; ECF No. 14-4 Lee Aff. ¶ 2.) The

infant plaintiff G.L. viewed such videos, and on January 4, 2025 used the product in a manner consistent with the methods depicted on TikTok by placing it in the freezer and then the microwave. (ECF No. 35 Am. Compl. ¶¶ 72–74, 82.) Upon removal from the microwave, the product exploded, burst, and/or split onto G.L., causing significant facial burns and permanent scarring. (*Id.* ¶¶ 82, 84, 103.)

At the time of the accident, the product's only warning stated: "CAUTION: Do not leave in car or direct sun. Contents may become hot." (ECF No. 35 Am. Compl. ¶ 76; ECF No. 14-4 Lee Aff. ¶ 3.) The label said nothing about freezing or microwaving, nothing about the risk that the product would burst, split, or explode, and nothing indicating that contact with the contents could cause burns. (ECF No. 35 Am. Compl. ¶¶ 77–79.) Mr. Lee read the label before allowing his children to play with the product and attests that, had it warned against freezing or microwaving or indicated danger, he would have prevented that use. (ECF No. 14-4 Lee Aff. ¶ 3.) This affidavit is before the Court from the prior motion to dismiss in this matter. (ECF No. 14-4.)

Before plaintiffs' purchase, the hazard had already surfaced publicly. An incident which occurred on October 29, 2024 involving a Schylling gel-filled sensory toy was reported to the CPSC through SaferProducts.gov, describing an 8-year-old child who suffered chemical burns when the toy "busted" and the liquid inside contacted the child's leg. (ECF No. 35 Am. Compl. ¶ 63.) A second, materially identical incident occurred when a 10-year-old who suffered a chemical burn requiring emergency treatment was reported on January 12, 2025, corroborating the same failure mode. A letter dated March 19, 2025 from Consumer Reports to the CPSC documents both incidents, identifies the product line as a Schylling NeeDoh gel toy with the same gel-filled design and the same failure mode, and asks the agency to investigate the inner gel contents of these toys.

The same gel chemistry, the same manufacturer, and the same injury mechanism connect the reported incidents to the product at issue. (*Id.* ¶¶ 63–64.)

Finally, immediately after the accident, and before plaintiffs notified defendants of it, defendants changed the product's labeling to read: "Do not heat, freezer, or microwave; it may cause personal injury." (ECF No. 35 Am. Compl. ¶ 80; ECF No. 14-4 Lee Aff. ¶ 4.) That change demonstrates both that the freeze-and-microwave use was foreseeable and that an adequate, feasible warning was available.

## ARGUMENT

## POINT I

## ON A RULE 12(b)(6) MOTION THE COURT MUST ACCEPT THE WELL-PLEADED ALLEGATIONS AS TRUE AND DRAW ALL REASONABLE INFERENCES IN PLAINTIFFS' FAVOR

In reviewing a motion to dismiss under Rule 12(b)(6), a court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff's favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021). A complaint need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plausibility "is not akin to a probability requirement." *Ashcroft*, 556 U.S. at 678. Plaintiffs are not required to prove their case at the pleading stage, nor to plead evidentiary detail uniquely within defendants' possession. Under New York law, "[t]he adequacy of the warnings be determined by the trier of fact" and the Second Circuit has observed that New York law would allow the jury to decide whether plaintiff was sufficiently aware of the danger to exempt the

4

supplier from its duty to warn. *Billiar v. Minnesota Mining & Mfg. Co.*, 623 F.2d 240, 246 (2d Cir. 1980). Likewise, whether a particular misuse is reasonably foreseeable, and whether a warning is adequate to deter it, are "ordinarily questions for the jury." *Johnson v. Johnson Chem. Co.*, 183 A.D.2d 64, 69 (2d Dep't 1992). These principles control the disposition of every point raised in defendants' motion.

## POINT II

## PLAINTIFFS HAVE ADEQUATELY PLEADED A FAILURE-TO-WARN CLAIM OF THE KIND THE COURT IDENTIFIED AS SUFFICIENT TO SURVIVE DISMISSAL

Under New York law, a manufacturer or distributor has a duty to warn against "dangers resulting from foreseeable uses about which [it] knew or should have known," and "may be liable for failing to warn against the dangers of foreseeable misuse of its product." *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 237, 240 (1998). To state the claim, a plaintiff must allege "(1) that a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that failure to do so was the proximate cause of harm." *Colon v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 84 (S.D.N.Y. 2001). The Amended Complaint pleads each element.

### A. The TikTok and CPSC allegations establish foreseeability and notice at the pleading stage.

In its prior decision, the Court identified the very categories of allegations now pleaded as the path to a sufficient claim. Although the Court noted the issue was "not presently teed up," it observed that "a viral TikTok video and a warning from a body like the Consumer Product Safety Commission seem like enough to get past a motion to dismiss" on failure-to-warn and foreseeability theories, and it granted leave to add precisely that information. (ECF No. 29.) The CPSC incident reports referenced in paragraphs 62–64 of the Amended Complaint are significant

because, at a minimum, they placed the defendants on constructive notice of the hazard before the plaintiffs purchased the product. (ECF No. 35 Am. Compl. ¶¶ 62–64.)  The Amended Complaint responds directly. It alleges that, for months before plaintiffs' purchase, TikTok users depicted parents and children freezing and then microwaving the product to make it more malleable—a practice sufficiently widespread that it reached and was imitated by an eight-year-old child (ECF No. 35 Am. Compl. ¶¶ 63–66, 73–74); that G.L. used the product "in a manner consistent with methods of use which were depicted, portrayed and shown on the social media site TikTok" (*Id.* ¶ 74); that the hazard was the subject of a pre-purchase incident report to the CPSC (*Id.* ¶ 63); and that defendants changed the warning label immediately after the accident to prohibit exactly this conduct (*Id.* ¶ 80). Accepted as true and read together, these allegations state the foreseeability-based failure-to-warn claim the Court described.

Defendants' contention that plaintiffs were obligated to identify a particular TikTok video by URL, view count, or posting date misreads the Court's order and the pleading standard. Nothing in the Court's decision required plaintiffs to catalog specific videos; the Court referred generally to "the TikTok video" and to "any other publicly known warnings." (ECF No. 29.) Viewership metrics and the identity of the videos are matters for discovery. At the pleading stage, the allegation that the freeze-and-microwave practice was sufficiently widespread on TikTok that it reached and was copied by an eight-year-old child supports the reasonable inference that the practice was a foreseeable use of which a manufacturer monitoring its product's public reception knew or should have known. The father's affidavit confirms that the practice was depicted on TikTok and referenced "throughout the internet and on Google" before the accident and that the videos have since been removed. (ECF No. 14-4 Lee Aff. ¶ 2.)

6

On notice, the October 29, 2024 incident complaint submitted to the CPSC is not, as defendants suggest, a stray complaint "somewhere in the world." Reports of harm submitted to the CPSC's SaferProducts.gov database are governed by 15 U.S.C. § 2055a. Under subsection (c)(1), not later than five business days after the Commission receives a qualifying report identifying the manufacturer, the Commission "shall to the extent practicable transmit the report . . . to the manufacturer . . . identified in the report." 15 U.S.C. § 2055a(c)(1). The identified manufacturer is then afforded an opportunity to comment, *id.* § 2055a(c)(2)(A), and the report is not made public until the process set out in subsection (c)(3) runs its course, meaning the identified manufacturer receives the report before it is published. See *id.* § 2055a(c)(1)–(3). The CPSC's database information will come out during discovery. Drawing all reasonable inferences in plaintiffs' favor, as the Court must, the pre-purchase October 2024 report of a materially identical injury from a Schylling gel toy supports the plausible inference that Schylling had, at minimum, constructive notice of the hazard. Plaintiffs need not prove actual notice at the pleading stage; they need allege only a plausible basis for it, and the combination of the statutory reporting mechanism and the widespread, months-long TikTok practice of freezing and microwaving the product (ECF No. 35 Am. Compl. ¶¶ 63–66, 73–74) supplies that basis. Defendants' demand for proof that a specific defendant "received, reviewed, monitored, [or] tracked" the report improperly imports a summary-judgment standard into a motion to dismiss; whether and when each defendant in fact received notice is a question for discovery.

Defendants' emphasis on the fact that the reported incidents involved a "similar" Schylling toy rather than the Dream Drop itself is, if anything, confirmatory. The similar Schylling product identified in the Consumer Reports letter is the NeeDoh Nice Cube, a toy in the same Schylling NeeDoh gel-toy line as the Dream Drop, sharing the same gel-filled design and the same failure

7

mode. (ECF No. 35 Am. Compl. ¶¶ 63–64.) New York law permits reliance on substantially similar incidents to establish notice and foreseeability. The reported incidents involved the same manufacturer (Schylling), the same gel-filled sensory-toy product line and the same failure mode which is bursting or splitting and expelling hot liquid that burns children. That is the textbook definition of a substantially similar incident. Whether the contents are "the exact" or merely "similar" contents (ECF No. 35 Am. Compl. ¶ 63) is a factual question for discovery, not a basis for dismissal.

### B. Defendants' "open and obvious" and "extreme misuse" arguments raise fact questions and misapply the governing law.

Defendants argue that the "Contents may become hot" caution rendered the danger open and obvious and that microwaving was extreme misuse defeating the claim as a matter of law. Both arguments fail at the pleading stage. First, the existing warning cuts against defendants: by cautioning against leaving the product in a hot car or direct sun because "[c]ontents may become hot," defendants demonstrated their own awareness that heat exposure presented a hazard yet they said nothing about the consequence that the sealed product could build pressure, burst, and expel scalding contents causing burns. A warning that identifies a risk while concealing its gravest consequence is not adequate as a matter of law; its sufficiency is a jury question. *See Collins v. Proctor & Gamble, Inc.*, 1998 WL 812620, at *1 (E.D.N.Y. Mar. 12, 1998) (warning about heating cooking oil inadequate where it failed to warn the product might ignite and a lid could be forced off; "it is not apparent to the average consumer" that the danger existed).

Second, *Liriano* forecloses defendants' misuse theory at this stage. The New York Court of Appeals held that "manufacturer liability can exist under a failure-to-warn theory in cases in which the substantial modification [or misuse] defense as articulated in *Robinson* might otherwise

8

preclude a design defect claim." *Liriano*, 92 N.Y.2d at 239–41. The *Robinson* and *Fagan* line on which defendants rely concerns substantial post-sale modification (a design-defect doctrine) and even there the inquiry is fact-specific. Here there was no modification of the product at all; there was a use (freezing then heating) that plaintiffs allege was depicted repeatedly on social media and was therefore foreseeable. "[E]ven when an injury results from misuse of a product, proximate cause may exist. If a particular way of misusing a product is reasonably foreseeable, then a manufacturer's failure to warn of potential dangers from that misuse may be the proximate cause of a subsequent injury." *Miller v. Sportsman's Guide, LLC*, 2024 WL 1683842, at *15 (W.D.N.Y. Mar. 28, 2024).

Third, the injured user was eight years old. The reasonableness of an eight-year-old's conduct, and whether the danger was "open and obvious" to such a child imitating a widespread social-media practice, cannot be resolved as a matter of law on the pleadings. Indeed, the New York Appellate Division has held that where a misuse is demonstrably foreseeable, that foreseeable misuse can substantiate both failure-to-warn and design-defect claims. *See M.H. v. Bed Bath & Beyond Inc.*, 156 A.D.3d 33, 36–38 (1st Dep't 2017).

**C.  Plaintiffs have adequately pleaded proximate cause.**

The Amended Complaint alleges that had a proper warning been provided, plaintiffs would not have frozen or microwaved the product and the injury would not have occurred. (ECF No. 35 Am. Compl. ¶ 85.) That allegation, accepted as true, is a sufficient and plausible allegation of causation; the Lee Affidavit confirms the same facts and, to the extent the Court considers matters outside the pleading, demonstrates that the allegation is well-founded and amendable (see Point VI). "It is a plausible inference from [p]laintiff's allegations that, had she been advised" of the danger, "she would have" acted differently. *Thomas v. ConAgra Foods, Inc.*, 2021 WL 1176011,

at *4 (W.D.N.Y. Mar. 29, 2021). Defendants' post-incident adoption of the exact warning plaintiffs say was required ("Do not heat, freezer, or microwave") further supports the inference that an adequate warning was feasible and would have prevented the harm. (ECF No. 35 Am. Compl. ¶ 80.)

## POINT III

## PLAINTIFFS' STATE-LAW NEGLIGENCE CLAIM FOR NON-COMPLIANCE WITH THE FHSA'S MANDATORY SIGNAL-WORD AND HAZARD-STATEMENT REQUIREMENTS IS NOT PREEMPTED AND IS ADEQUATELY PLEADED UNDER MILANESE

As stated in plaintiffs' prior opposition to the defendants' initial motion to dismiss, plaintiffs do not assert a private right of action under the FHSA, and to the extent the motion is directed at such a theory it is unopposed. Plaintiffs' claim is a New York common-law negligence/failure-to-warn claim that uses the FHSA's labeling requirements to supply the standard of care. The Second Circuit squarely holds that such a claim survives. In *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2d Cir. 2001), the court held:

> *We agree with Milanese ... that a state cause of action alleging non-compliance with the FHSA would not be preempted by the Act. ... Although there is no federal private right of action under the FHSA, Riegel Textile Corp. v. Celanese Corp., 649 F.2d 894, 903 (2d Cir. 1981), a state negligence claim lies for failure to comply with the federal, FHSA-mandated labeling requirements. Wallace v. Parks Corp., 212 A.D.2d 132, 140, 629 N.Y.S.2d 570, 576 (4th Dep't 1995).*

*Id.* at 109–10. The court reversed dismissal and reinstated the plaintiff's cross-motion to add precisely this kind of FHSA-compliance negligence claim, holding that the adequacy of the label's hazard statement presented a triable issue. *Id.* at 109–13.

The FHSA requires that a covered hazardous substance intended for children bear a label that, where appropriate, includes the signal word "DANGER" and, among other things, "an

10

affirmative statement of the principal hazard or hazards, such as 'Flammable', 'Combustible', 'Vapor Harmful', 'Causes Burns', 'Absorbed Through Skin', or similar wording descriptive of the hazard," together with "precautionary measures describing the action to be followed or avoided." 15 U.S.C. § 1261(p)(1)(C), (E)–(F). The failure to use the prescribed signal word and an adequate affirmative statement of the principal hazard raises a triable issue of FHSA non-compliance. *See Richards v. Home Depot, Inc.*, 456 F.3d 76, 78–80 (2d Cir. 2006); *Leibstein v. LaFarge N. Am. Inc.*, 689 F. Supp. 2d 373, 384–85 (E.D.N.Y. 2010) (use of "CAUTION" rather than "DANGER," and failure to include an adequate affirmative statement of the principal hazard, raised issues of fact).

Here, the product's only statement was "CAUTION: Do not leave in car or direct sun. Contents may become hot." (ECF No. 35 Am. Compl. ¶ 76.) That label used the signal word "CAUTION" rather than "DANGER," and it contained no affirmative statement of the principal hazard, such as "Causes Burns", as the statute prescribes. (*Id.* ¶¶ 76–80.) That is precisely the federal-labeling non-compliance that the *Leibstein* and *Richards* line of authority holds states a claim. Separately, defendants' own post-incident adoption of a "do not freeze, heat or microwave" instruction is relevant not as an FHSA-mandated term but as evidence that an adequate, feasible warning existed, a matter bearing on the common-law New York State failure-to-warn claim in Point II. Under *Milanese*, *Richards*, and *Leibstein*, that is a viable, non-preempted claim. Plaintiffs' FHSA-based theory seeks only to enforce the federal labeling standard itself—the prescribed signal word and affirmative hazard statement—and therefore does not impose any requirement "different from or in addition to" federal law. The preemption holding defendants invoke, which bars only non-identical state labeling requirements, is thus inapposite.

11

Defendants' contention that the product cannot be a "hazardous substance" because its filling is "100% Malt Extract" does not defeat the claim at the pleading stage. The FHSA defines "hazardous substance" to include a substance that "generates pressure through decomposition, heat, or other means" if it "may cause substantial personal injury … during or as a proximate result of any customary or reasonably foreseeable handling or use." *See* 15 U.S.C. § 1261(f)(1)(A). The Amended Complaint alleges that the sealed contents expand and generate pressure when the product is frozen and then heated, causing it to burst and expel hot material that burns the skin. (ECF No. 35 Am. Compl. ¶¶ 59–62, 82.) Defendants' response is that microwaving is not "reasonably foreseeable" handling and that malt extract is exempt food—but both arguments turn on disputed facts. As to foreseeability, the very TikTok practice and pre-purchase incident reporting discussed in Point II make the freeze-and-microwave use a question of fact, not a matter resolvable on the pleadings; defendants cannot simultaneously concede (as their own brief does) that the contents become dangerous when "heated to extreme temperatures inside a sealed container" and assert as a matter of law that such heating was unforeseeable. As to the food exemption, whether a sealed children's toy is "intended for ingestion as food" within 15 U.S.C. § 1261(f)(2) is itself a fact-bound question; the exemption addresses substances intended for consumption, not sealed gel fillings of toys, and the statute's "hazardous substance" definition expressly reaches articles "intended for use by children." In all events, plaintiffs' surviving negligence theory does not depend on the FHSA "hazardous substance" classification: it rests independently on New York common-law failure-to-warn principles (Point II). The FHSA supplies an additional, non-preempted standard of care to the extent the factfinder determines the product is covered, and that determination cannot be made on a Rule 12(b)(6) motion, where the Court must accept plaintiffs' allegations as true.

12

## POINT IV

## THE SECOND CAUSE OF ACTION IS PROPERLY BEFORE THE COURT AND ADEQUATELY PLEADED FOR THE PLEADING STAGE

Defendants first argue that the negligent design and manufacture claim exceeds the scope of the Court's leave to amend. It does not. The original pleading already asserted product-defect theories sounding in strict liability and negligence, which the Court dismissed as inadequately specified rather than as impermissible—faulting the original complaint for failing to "specify whether this is a claim of design defect, manufacturing defect, or a warning defect." (ECF No. 29.) The Second Cause of Action does what the Court's order contemplated: it specifies the previously asserted defect theory and grounds it in the same operative facts (the product's rupture under the temperature conditions the amendment was authorized to address). It is therefore a clarified repleading, not an untethered new claim, and the rule defendants invoke—that leave granted for a limited purpose may not be used to inject wholly new claims—is not implicated. In all events, any doubt about scope is properly resolved by granting leave to replead the design and manufacturing theory (Point VI), not by dismissal with prejudice.

On the merits, the claim is adequately pleaded for the pleading stage. A New York design-defect claim requires allegations that the product as designed posed a substantial likelihood of harm, that a feasible alternative design existed, and that the defective design proximately caused the injury. *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107 (1983). Plaintiffs allege that the sealed product builds internal pressure and ruptures when subjected to ordinary temperature changes, that it had minimal utility as a simple sensory toy yet posed a severe burn risk to the children who are its intended users, and that feasible safer designs existed—for example, a casing or seam construction that would vent or resist rupture rather than burst and expel its heated contents, or a filling formulated not to generate the pressure that causes the rupture. (ECF No. 35

13

Am. Compl. ¶¶ 59–62, 102.) New York law recognizes that where a product's foreseeable misuse renders it dangerous, both design-defect and failure-to-warn theories may proceed. *M.H.*, 156 A.D.3d at 36–38 (recognizing, albeit at summary judgment, that a foreseeable misuse may support both design-defect and failure-to-warn theories; the principle applies with greater force at the pleading stage, where plaintiffs need only state a plausible claim). To the extent the Second Cause of Action is also read to assert a manufacturing-defect theory, plaintiffs acknowledge that such a theory requires an allegation that the specific unit deviated from others in the product line, and they do not press a manufacturing-defect theory on the current pleading; the claim is properly understood as one for negligent and defective design, with leave to replead a defect theory available if discovery warrants.

Plaintiffs are not required to prove a feasible alternative design, or to identify the precise manufacturing deviation, before any discovery has occurred. The details of defendants' design process, internal testing, risk assessments, and the alternatives they considered are uniquely within defendants' possession and are the proper subject of discovery. At the pleading stage, plaintiffs' allegations accepted as true and read with all reasonable inferences in their favor state a plausible claim. To the extent the Court concludes that the design theory requires further specificity, the appropriate remedy is leave to replead (Point VI), not dismissal with prejudice.

## POINT V

## THE DEMAND FOR PUNITIVE DAMAGES SHOULD NOT BE STRICKEN AT THE PLEADING STAGE

Defendants ask the Court to strike the punitive damages demand on the pleadings. That request is premature. The Amended Complaint alleges that defendants continued to manufacture, market, and sell the product without adequate warnings after receiving notice, through the CPSC

14

reporting and social media, that the product was bursting and causing chemical burns to children, and that they declined to change the warning or recall the product based on a cost-benefit calculus prioritizing profit over child safety. (ECF No. 35 Am. Compl. ¶¶ 86–88.) Whether defendants in fact made such a decision and acted with the conscious or reckless disregard for safety that New York requires for punitive damages depends on evidence of defendants' internal knowledge, communications, and decision-making that is exclusively within their possession and obtainable only through discovery.

It would invert the order of proof to strike a punitive demand before plaintiffs have had any opportunity to discover what defendants knew and when, and what they decided to do about it. If discovery establishes that defendants knowingly continued to sell the product without adequate warnings notwithstanding their knowledge of the injuries it was causing, and that they weighed the cost of an adequate warning or recall against the cost of continued injuries and chose profit, punitive damages will be amply supported. The facts presently before the Court indicate that defendants had prior notice of the danger associated with heating and/or microwaving the product at issue, yet continued to market and sell the product for use by children without adequate warning or other remedial measures. At this stage of the proceedings, these facts support an inference that defendants acted with willful disregard for the health and safety of children. The proper course is to permit the demand to stand subject to later testing on a developed record, not to foreclose it now. The viability of the demand rises and falls with the underlying tort claims, which, as shown above, are adequately pleaded. The New York Court of Appeals has specifically held that nothing in New York law or public policy would preclude an award of punitive damages in a strict products liability case where the theory of liability is a failure to warn. *Home Ins. Co. v. American Home Products Corp.*, 75 N.Y.2d 196, 203 (1990).

## POINT VI

## IN THE ALTERNATIVE, LEAVE TO AMEND SHOULD BE GRANTED BECAUSE FURTHER AMENDMENT WOULD NOT BE FUTILE

Although plaintiff firmly believes the case as pleaded satisfies this Court's prior Order and the applicable case law should the Court conclude that any claim remains insufficiently pleaded, particularly as to the specificity of the notice and TikTok allegations, leave to amend should be granted. Rule 15(a) directs that leave be "freely give[n] … when justice so requires," and "[w]hen a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss." *Milanese*, 244 F.3d at 110. Amendment here would not be futile, because the supporting facts demonstrably exist and are pleadable.

Plaintiffs need not prove notice to replead it; they need only allege a prima facie basis. The materials already before the Court show such a basis exists. Mr. Lee attests that his children showed him a TikTok video depicting the freeze-and-microwave practice before the accident, that references to such videos appeared throughout the internet and on Google, and that the videos have since been removed from TikTok. (ECF No. 14-4 Lee Aff. ¶ 2.) The Consumer Reports letter documents two SaferProducts.gov incident reports involving a Schylling gel toy causing chemical burns to children, one of them predating plaintiffs' purchase, and the statutory transmission of such reports to the manufacturer supports the inference of pre-purchase notice. Although plaintiff argues at this stage of the litigation they have sufficiently pleaded their causes of action, if required, plaintiffs can replead these facts with greater specificity, including the nature, timing, and online prevalence of the TikTok content and the specifics of the CPSC reporting. Because those facts exist and would state a claim, denial of leave as "futile" would be improper.

16

Defendants' reliance on *Foman v. Davis* and *Ruotolo v. City of New York* is misplaced. Those cases recite the general standard for denying leave; they do not establish futility on these facts. Plaintiffs have not engaged in repeated failed attempts to cure the same defect, this is the first amendment following the Court's guidance, and it added substantial new matter (the TikTok practice, the CPSC reporting, the post-incident label change, and a properly specified defect theory) responsive to that guidance. Where, as here, the proposed allegations would survive a motion to dismiss, leave should be granted.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny defendants' motion to dismiss the Amended Verified Complaint in its entirety; or, in the alternative, grant plaintiffs leave to file a further Amended Complaint as the Court so requires to maintain the pleaded causes of action; together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
      July 21, 2026

Respectfully submitted,

*John J. Appell*
John J. Appell, Esq.
**APPELL & PARRINELLI**
Attorneys for Plaintiffs
3 West 35th Street, 6th Floor
New York, New York 10001
(212) 947-0101

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

G.L., an Infant by her Father and Natural      :
Guardian, MICHAEL LEE and MICHAEL LEE,      :
Individually,      :

     :

     :

Plaintiffs,      :

     :

v.      : Civil Action No. 1:25-cv-05375 (AS)

     :

AMAZON.COM, INC. a/k/a AMAZON.COM      :
SERVICES, INC. d/b/a AMAZON.COM,      :
AMAZON MARKETPLACE; SCHYLLING      :
ASSOCIATES, INC.; and AS SEEN ON TV      :
PEOPLE, LLC,      :

     :

Defendants.      :

-------------------------------------------------------------------X

## CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL CIVIL RULE 7.1(c)

I hereby certify, pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern District of New York, that the foregoing Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Verified Complaint complies with the type-volume, typeface, and type-style requirements of the Rule, as follows:

1.  Exclusive of the caption, table of contents, table of authorities, signature block, this certificate, and the certificate of service, the memorandum contains <u>5,241</u> words, and therefore complies with the word-count limitation of Local Civil Rule 7.1(c).

2.  The memorandum has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Times New Roman font.

1

3.  The word count was generated using the word-count function of the word-processing software used to prepare the memorandum.

Dated: New York, New York
July 21, 2026

Respectfully submitted,

*John J. Appell*
John J. Appell, Esq.
**APPELL & PARRINELLI**
Attorneys for Plaintiffs
3 West 35th Street, 6th Floor
New York, New York 10001
(212) 947-0101

2

## CERTIFICATE OF SERVICE

STATE OF NEW YORK
COUNTY OF NEW YORK

John J. Appell, states the following to be true under the penalties of perjury;

That deponent is not a party to the action, is over 18 years of age and resides at Nassau County.

I hereby certify that on July 21, 2026, a true and accurate copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Verified Complaint, together with the Table of Contents, Table of Authorities, and Certificate of Compliance, was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, and was served upon the following counsel for defendants via the CM/ECF system and electronic mail:

Rondiene E. Novitz, Esq.
CRUSER, MITCHELL, NOVITZ,
SANCHEZ, GASTON & ZIMET, LLP
*Attorneys for Defendants*
341 Conklin Street
Farmingdale, New York 11735
(516) 586-8513
rnovitz@cmlawfirm.com

Dated: New York, New York
       July 21, 2026

John J. Appell, Esq.
**APPELL & PARRINELLI**
Attorneys for Plaintiffs
3 West 35th Street, 6th Floor
New York, New York 10001
(212) 947-0101

Sworn to before me this
21st day of July 2026

NOTARY PUBLIC

JULISSA ANN UMHAEFER
Notary Public, State of New York
No. 01UM0007768
Qualified in Kings County
Commission Expires May 16, 2027